COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| CHARLES GLENN MASSEY A/K/A CHARLES GLENN WHITELY, | § | No. 08-11-00051-CR |
| Appellant, | § | Appeal from |
| | § | 355th District Court |
| v. | § | |
| THE STATE OF TEXAS, | § | of Hood County, Texas |
| Appellee. | § | (TC # CR11454) |

**O P I N I O N**

Charles Glenn Massey a/k/a Charles Glenn Whiteley appeals his conviction of possession of less than one gram methamphetamine, enhanced by two prior convictions. A jury found Appellant guilty and the trial court assessed punishment. The court found both enhancement paragraphs true based on Appellant's pleas of true, and assessed Appellant's punishment at imprisonment for twenty years. We affirm.

**SUFFICIENCY OF THE EVIDENCE**

In his sole issue on appeal, Appellant contends that the evidence is insufficient to prove beyond a reasonable doubt that he knowingly possessed methamphetamine.

*Standard of Review and Applicable Law*

In reviewing the sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 895-95 (Tex.Crim.App. 2010), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine

whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id*. On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id*.; *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.). Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Id*. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); *Arzaga*, 86 S.W.3d at 777.

The Penal Code defines "possession" as actual care, custody, control, or management. TEX.PENAL CODE ANN. § 1.07(a)(39)(West Supp. 2011). To prove unlawful possession of a controlled substance, the State must prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005); *see* TEX.HEALTH &

SAFETY CODE ANN. § 481.115(a)(West 2010). Mere presence at a location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006). When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406.

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish someone's possession of contraband include: (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the contraband, (4) whether he was under the influence of a controlled substance or narcotic when arrested, (5) whether he possessed other contraband when arrested, (6) whether he made incriminating statements when arrested, (7) whether he attempted to flee, (8) whether he made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether he owned or had the right to possess the place where the contraband was found, (12) whether the contraband was found in an enclosed place, (13) whether he was found with a large amount of cash, (14) whether his conduct indicated a consciousness of guilt, (15) whether he made incriminating statements connecting himself to the contraband, (16) the quantity of the contraband, and (17) whether he was observed in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12; *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.). These are simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove knowing "possession." *Evans*, 202 S.W.3d at 162 n.12. They are not a litmus test. *Id.*

- 3 -

*Review of the Evidence*

Roland Smith, an investigator with the Hood County Sheriff's Office, received a tip that there was a "drug house" located in a Granbury subdivision. Smith and Investigator James Luckie went to the house one afternoon to conduct surveillance. Smith saw an individual named Marcus Dunson leave the residence in a vehicle and he informed Investigator Clark who was waiting in his vehicle outside of the subdivision. Clark observed Dunson run a stop sign and initiated a traffic stop. Smith and Luckie had followed Dunson and they arrived at the stop as it occurred. Dunson was arrested for possession of methamphetamine.

During the traffic stop, another vehicle pulled up. The driver, Sheila Hardy, began yelling that her teenage son had been kidnapped and was in the house that the officers had been watching. Hardy explained that she had filed a runaway report. After verifying that a runaway report had been filed, Clark and Luckie returned to the house to try to make contact with the juvenile. When they arrived, Appellant was in his driveway working on his truck. Hardy's son and another individual, Mark Baker, were standing at the front door. When Baker saw the officers, he yelled "Police!" and Appellant hid under his truck until one of the officers made him come out. The officers arrested Baker for a parole violation and they took the juvenile into custody after determining that he was Hardy's son. The juvenile told the officers that he needed to go into the house because he was cooking something on the stove. Appellant likewise asked if the juvenile could go back into the house to turn off the stove. Clark accompanied him inside because he feared the juvenile would attempt to run. Clark walked through the living area into the kitchen and saw drug paraphernalia, including marihuana "siftings" and rolling paper, in plain view. Clark secured the house and arrested Appellant for harboring a runaway.

The officers returned with a search warrant and searched the house. Outside of the residence, the officers found a surveillance camera focused on the front door of the house and it was connected to a computer located in Appellant's bedroom. In that bedroom, they found in a desk drawer a small amount of methamphetamine in a baggie[1] and paraphernalia for using the methamphetamine, including spoons used to heat methamphetamine, a cotton ball used to filter the methamphetamine as it is drawn into a syringe, and syringes. Additionally, they found a marihuana pipe. In Dunson's bedroom, the officers found a bank bag containing several small baggies used to package methamphetamine for sale, a methamphetamine pipe, a marihuana grinder, and packaged syringes. They also found scales that could be used to weigh methamphetamine.

James Luckie interviewed Appellant after he was arrested. Appellant told Luckie that he had been smoking methamphetamine twice a month for fourteen years and he had received methamphetamine from Dunson in exchange for free rent. Appellant told Luckie that his sister owned the house but he was in control of the premises and its contents. He knew the methamphetamine was in the desk drawer but he claimed the methamphetamine was not his. Appellant told Luckie that his bedroom was actually a community area of the house and all of the residents used the desk.

Appellant maintains that the evidence showed that his bedroom and the desk were used by all of the residents, but he fails to view the evidence in the light most favorable to the verdict. Investigator Smith specifically testified that he determined through his investigation that the bedroom in question was Appellant's room. Furthermore, access by the other residents does not preclude a finding that Appellant possessed the methamphetamine. Our task is to examine the evidence to determine if there are sufficient links that would permit a conclusion that he

---

[1] The baggie contained .02 grams of methamphetamine.

knowingly possessed the methamphetamine.

Appellant argues that several of the affirmative link factors are not present. But an appellate court should not focus on the absence of certain affirmative links; it should consider the logical force of the links that are present. *Edwards v. State*, 178 S.W.3d 139, 144 (Tex.App.-- Houston [1st Dist.] 2005, no pet.). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Evans*, 202 S.W.3d at 162. Several of the affirmative link factors are present here. Appellant did not own the house but he was in control of it and he knew that the methamphetamine was in his bedroom in an enclosed place, a desk drawer, along with paraphernalia used to inject the methamphetamine. Appellant's control of the house gives rise to a reasonable inference that he had care, custody, or control of the methamphetamine found in a desk drawer in his bedroom. *See Evans*, 202 S.W.3d at 163. The probative force of this evidence is increased by the presence of the paraphernalia and Appellant's admission that he had used methamphetamine on a regular basis for many years and he allowed Dunson to stay at the house rent-free in exchange for methamphetamine. *See Joseph v. State*, 897 S.W.2d 374, 376 (Tex.Crim.App. 1995)(presence of drug paraphernalia in home with contraband supported conclusion the defendant knew he possessed cocaine). Appellant told the officers that the methamphetamine found in the desk was not his but that assertion is contrary to his admitted regular usage of methamphetamine. His claim of innocence is also inconsistent with his behavior when the officers arrived. Appellant exhibited a consciousness of guilt because he attempted to hide under his truck when Baker yelled "Police!" Further, a surveillance camera aimed at the front door of the house was connected to Appellant's computer located in his bedroom. The surveillance camera is not only evidence of consciousness of guilt, but it also demonstrates an effort by Appellant to exercise care, custody, and control of the

methamphetamine because it would permit Appellant to see who was at the front door without actually opening the door.

Taken in the light most favorable to the verdict, the evidence is legally sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Appellant knew that the substance found in his bedroom was methamphetamine and he exercised control, management, or care over it. We overrule Appellant's sole issue on appeal and affirm the judgment of the trial court.

May 16, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)